## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
)
**KATHERINE EBAN FINKELSTEIN,**        )
)
    **Plaintiff,**        )
)
        **v.**        )    **Case No. 22-cv-02229 (APM)**
)
**NATIONAL INSTITUTES OF HEALTH,**        )
)
    **Defendant.**        )
_____ )

## MEMORANDUM OPINION AND ORDER

Before the court in this Freedom of Information Act (FOIA) case is Plaintiff Katherine Eban Finkelstein's Motion for Attorney Fees and Costs, ECF No. 21 [hereinafter Pl.'s Mot.]. Plaintiff seeks an award of $36,973.65. *Id.* Defendant National Institutes of Health (NIH) opposes, challenging Plaintiff's eligibility for and entitlement to a fee award, as well as the reasonableness of the amount requested. *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 23 [hereinafter Def.'s Opp'n]. For the reasons that follow, the court grants Plaintiff's motion and awards the full amount requested.

## I.

Plaintiff is an author and investigative journalist. Pl.'s Mot., Decl. of Katherine Eban Finkelstein, ECF No. 21-3 [hereinafter Finkelstein Decl.], ¶¶ 1, 7. On November 22, 2021, she submitted a FOIA request to Defendant for records regarding grant funding for and complaints about a study known as The Living Brain Project. *Id.* ¶¶ 11, 13; Compl., ECF No. 1 [hereinafter Compl.], Ex. 2, ECF No. 1-6 [hereinafter FOIA Request], at 1–2. At the time, Plaintiff was working on an article about the project. Finkelstein Decl. ¶¶ 8–10.

Defendant acknowledged the request on December 15, 2021. FOIA Request at 1; Def.'s Opp'n, Exs., ECF No. 23-2 [hereinafter Def. Exs.], at 22 (CM/ECF Pagination). On January 6, 2022, Zachary Smith, one of the reporters with whom Plaintiff was working on the story, asked for an estimated date by which Defendant would resolve the request. Finkelstein Decl. ¶ 12; Def. Exs. at 21. Defendant responded that the search was in progress and that, once all records were collected, they would be reviewed per the agency's "First-in, First-out" policy. Def. Exs. at 20–21. Defendant advised Smith that it could not provide an accurate estimated completion date until the records were under review. *Id.* at 21. Smith reached out again on April 14, 2022. *Id.* at 20. Defendant replied only that "[y]our request is still being processed and the search for records responsive to your request is ongoing." *Id.* at 19. Smith responded the same day and reiterated his request for an estimated completion date, but Defendant did not respond. *Id.* Undeterred, Smith once more sought an update on June 27, 2022, but again received no answer. *Id.*

Defendant's FOIA Officer, Gorka Garcia-Malene, has submitted a declaration that explains how the agency processed Plaintiff's request. Decl. of Gorka Garcia-Malene, ECF No. 23-1 [hereinafter Garcia-Malene Decl.], ¶ 1. On December 2, 2021, Defendant's central FOIA office forwarded the request to three agency subcomponents, the National Institute of Mental Health (NIMH), the National Institute on Aging (NIA), and the Office of Extramural Research (OER). *Id.* ¶ 8; Def. Exs. at 11. According to Garcia-Malene, NIMH notified the FOIA office less than one week later that "there were no records responsive to Item 1 of Plaintiff's request." Garcia-Malene Decl. ¶ 9. Defendant did not provide the court with this message, but it did submit one written days later stating that, "It appears as though NIMH won't have records as all records would be held at NIA." Def. Exs. at 11. As of April 2022, neither NIA nor OER had completed its search. *Id.* at 10. NIA reported on June 28, 2022, that it finished searching but that the records were in

line behind two other cases for review. *Id.* at 9. The agency did not share any of these specifics with Plaintiff.

Plaintiff filed this lawsuit to compel production on July 28, 2022. *See* Compl. Defendant answered on October 31, 2022, asserting several defenses and "den[ying] that Plaintiff is entitled to the relief requested or to any relief whatsoever." Answer to Pl.'s Compl., ECF No. 7 [hereinafter Answer], at 6.

Defendant thereafter received additional updates from the offices tasked with conducting searches. On September 15, 2022, OER informed the central FOIA office that it did not have any responsive records. Garcia-Malene Decl. ¶ 17. Two months later, on November 15, 2022, NIMH "reported they had records responsive to the other items in Plaintiff's request and later provided those records to the NIH FOIA office." *Id.* ¶ 23. Defendant then produced three sets of documents to Plaintiff: 443 pages in March 2023, 518 pages in April 2023, and 100 pages in May 2023. *Id.* ¶ 24. In a Joint Status Report filed on July 17, 2023, Defendant represented that it had "produced all non-exempt, responsive records." Joint Status Report, ECF No. 13, at 1. Plaintiff challenged some of Defendant's withholdings. *Id.* at 2. By October 2023, Defendant had amended and re-released 17 pages in light of those challenges. *See* Garcia-Malene Decl. ¶ 24. At that point, Plaintiff "was satisfied that NIH had completed an adequate search and properly applied all FOIA exemptions." Finkelstein Decl. ¶ 31; *see also* Joint Status Report, ECF No. 20, at 1.

Plaintiff now moves for attorney's fees.

## II.

Under FOIA, a court "may" award attorney's fees to a requester in a case in which the requester has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Whether to grant a fee award involves a two-part inquiry into the requester's eligibility for and entitlement to such an award.

*See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981).  If Plaintiff clears these hurdles, the court must evaluate the reasonableness of the amount requested.  *See* 5 U.S.C. § 552(a)(4)(E)(i).  The court takes each step in turn.

### III.

A requester is "eligible" for a fee award if she has "substantially prevailed."  *Church of Scientology*, 653 F.2d at 587 (quoting 5 U.S.C. § 552(a)(4)(E)).  A requester has "substantially prevailed" if she "obtained relief" through either (1) a "judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial." 5 U.S.C. § 522(a)(4)(E)(ii).  Only the latter criterion is at issue here.  *See* Pl.'s Mot., Mem. of L. in Supp. of Pl.'s Mot., ECF No. 21-13, at 15; Def.'s Opp'n at 5–6.

This ground for eligibility is known as the "catalyst theory."  *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).  Under that theory, the relevant question is whether "the institution and prosecution of the litigation caused the agency to release the documents obtained."  *Id.* at 97 (cleaned up).  To establish causation, Plaintiff must show more than "the mere filing of the complaint and the subsequent release of the documents."  *Id.* (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)).  Plaintiff must establish "it is more probable than not that the government would not have performed the desired act absent the lawsuit."  *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

Plaintiff has carried that burden.  Four facts together demonstrate that Defendant probably would not have released all responsive records without Plaintiff filing this lawsuit.  First, Defendant repeatedly refused to provide an estimated date of completion.  *See* 5 U.S.C.

4

§ 552(a)(7)(B)(ii) (requiring agencies to do so); *see also Env't Def. Fund v. EPA*, No. 17-cv-02220, 2022 WL 136792, at *5 (D.D.C. Jan. 13, 2022) (noting that the agency "never indicated in its pre-lawsuit communications that it would begin producing responsive records"). Second, in its answer, Defendant categorically denied that "Plaintiff is entitled to the relief requested or any relief whatsoever." Answer at 6. At the time Plaintiff filed this lawsuit, then, Defendant's position appeared to be that it was not obligated to produce any records in response to Plaintiff's request. *See Sierra Club v. EPA*, No. 19-cv-03018, 2021 WL 7210058, at *2 (D.D.C. Mar. 31, 2021) (considering the agency's position taken in its answer). Third, there are discrepancies in the record as to how and when NIMH conducted its search. Although Garcia-Malene states that early on NIMH denied having records responsive to only one part of Plaintiff's FOIA request, Garcia-Malene Decl. ¶ 9, contemporaneous email correspondence suggests a broader determination: "[i]t appears as though NIMH won't have records as all records would be held at NIA," Def. Exs. at 11. There is no indication that NIMH intended to continue its search, or evidence in the record that it in fact did so—that is, until it reported having responsive records nearly four months *after* Plaintiff filed this lawsuit. Garcia-Malene Decl. ¶ 23. Notably, the email exchanges in the interim reflect check-ins with only NIA and OER. *See* Def. Exs. at 9–11 ("Is the OER portion wrapped up? Just checking to see if you are only waiting on NIA."). The plausible inference here is that Plaintiff's suit spurred NIMH to look for and find records it previously disavowed having. Fourth and finally, after Plaintiff challenged some of Defendant's redactions, the agency amended and re-released 17 pages it had initially withheld from disclosure. Garcia-Malene Decl. ¶ 24. This indicates a clear change in position as to those pages over the course of this litigation. *See First Look Media Works, Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499, 2024 WL 4262773, at *6 (D.D.C. Sept. 23, 2024). Collectively, these four facts show it is "more probable than not" that

Defendant would not have produced the records Plaintiff now possesses absent this lawsuit. *Grand Canyon Tr.*, 947 F.3d at 97.

Defendant counters that Plaintiff is not eligible for fees because she "obtained records of the same type that she had prior to this litigation." Def.'s Opp'n at 6. Defendant does not explain how that negates Plaintiff's eligibility for a fee award, which depends on whether the lawsuit caused *Defendant* to change its position with respect to Plaintiff's request. In any event, Defendant has not substantiated this claim. As support, Defendant first cites Plaintiff's declaration at paragraphs 34 and 35. *Id.* at 6. But Plaintiff's declaration states only that, after searching the agency's public database of NIH-funded research projects, she requested "additional records not available through" the site. Finkelstein Decl. ¶ 34. It says nothing about what records she previously secured. Defendant also asserts that Plaintiff received "similar records from the Department [of Health and Human Services] and the Food and Drug Administration." Def.'s Opp'n at 6. That contention is based on Garcia-Malene's averment that "Plaintiff also obtained records from HHS and the Food & Drug Administration." Garcia-Malene Decl. ¶ 25. But Garcia-Malene does not say he compared the two sets of records, and he does not use the word "similar" to describe them. And even if they were similar, Defendant stops short of stating what might give this contention weight: that they were the *same*. *See Williams & Connolly v. SEC*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) ("[A]n agency has no obligation to release documents to a requester when another agency has already given the same requester the same documents.").

Defendant also argues that "the production delays were driven by the volume of FOIA requests and the challenge of gathering and processing all the records" and thus that "there is no reasonable inference here that any release of records after the litigation was filed was because of the litigation." Def.'s Opp'n at 7. The court does not doubt that Defendant faced a substantial

number of FOIA requests at the time Plaintiff filed hers. *See* Def. Exs. at 2. That may explain a production delay, but it does not dispel the above facts showing that Defendant probably changed its position in response to Plaintiff's lawsuit. *See Louise Trauma Center LLC v. Wolf*, No. 20-cv-2348, 2024 WL 4227617, at *2 (D.D.C. Sept. 18, 2024). The court therefore concludes that Plaintiff is eligible for attorney's fees.

**IV.**

The court now turns to whether Plaintiff is entitled to fees. This inquiry turns on four factors: "(1) the benefit to the public if any, derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis of law." *Church of Scientology*, 653 F.2d at 590. These factors support Plaintiff's entitlement to fees.

The first factor supports a fee award where, as here, "a newsman was seeking information to be used in a publication." *Fenster v. Brown*, 617 F.2d 740, 742 n.4 (D.C. Cir. 1979) (quoting S. Rep. No. 93-854, pt. 1, at 171 (1974)). Plaintiff is an investigative journalist. Finkelstein Decl. ¶¶ 1–3. She requested records from Defendant in researching and publishing an article about "the ethics of the trial and the safety of former, current, and future trial participants" in a grant-funded study of "patients receiving Deep Brain Stimulation ('DBS') in connection with debilitating conditions such as Parkinson's disease." *Id.* ¶¶ 8, 10. Not only does Plaintiff's article touch on issues of public health, but also "[t]he public has a strong interest in the effective and transparent administration of federal grant programs." *Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 251 (D.D.C. 2004). While Defendant attempts to downplay the extent

of the public's interest in the disclosed documents, it concedes that "there may be some public benefit here."  Def.'s Opp'n at 12.  This factor thus favors awarding fees.[1]

The second and third factors, which focus on Plaintiff's interest in the information, are "closely related" and often considered together.  *Fenster*, 617 F.2d at 743; *see also McKinely v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014).  Again here, Plaintiff's role as a journalist and the public's interest in the content of her article weigh in favor of a fee award.  *See Kwoka v. IRS*, 989 F.3d 1058, 1064 (D.C. Cir. 2021).  Because "news interests, regardless of private incentive, generally should not be considered commercial interests," factors two and three "'generally' should weigh in favor of . . . journalists unless their interest 'was of frivolous or purely commercial nature.'"  *Id.* (quoting *Davy v. CIA*, 550 F.3d 1155, 1160–61 (D.C. Cir. 2008)).  As in *Kwoka*, Defendant here "does not contend that [Plaintiff's] interest was 'frivolous' or 'purely commercial.'"  *Id.* at 1065.  Defendant argues only that it is "*likely* that the information will become the subject of published books or articles of commercial value" and that "it appears plausible that Plaintiff was motivated *in part* by her own private interests, as a reporter."  Def.'s Opp'n at 13 (emphases added).  The former is wholly speculative, and the latter falls short of establishing that Plaintiff's interests were *purely* commercial.  Nevertheless, the D.C. Circuit has spoken clearly on Defendant's line of reasoning: "[T]he mere intention to publish a book does not necessarily mean that the nature of the plaintiff's interest is 'purely commercial.'  Surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an

---

[1] In addition, Defendant's argument as to why the public's interest in these records is minimal is unsupported. Defendant asserts that "there can be no genuine dispute that others made similar prior requests for similar information," so "Plaintiff's lawsuit did not reveal the same magnitude of new information that would assist the public in making 'vital political choices' given the amount of information already available on the research funded by NIH." Def.'s Opp'n at 12.  To support its assertion that others had already requested similar records, Defendant cites to paragraphs 28 and 29 of the Garcia-Malene declaration.  *Id.*  But the declaration ends at paragraph 25, and this information does not appear to be elsewhere in the declaration, *see generally* Garcia-Malene Decl., or the record, *see generally* Def. Exs.

award of attorney's fees under FOIA." *Davy*, 550 F.3d at 1160 (internal citation omitted).  Factors two and three therefore weigh in Plaintiff's favor.

Finally, the fourth factor supports Plaintiff's entitlement to fees because the government had no reasonable basis for its withholdings. *Church of Scientology*, 653 F.3d at 590.  For this factor, the burden is on Defendant to show "that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit." *Davy*, 550 F.2d at 1163.  To explain its delayed productions, Defendant again invokes the volume and backlog of FOIA requests.  Def.'s Opp'n at 14–15.  But generally, "administrative delay and FOIA backlog do not form a reasonable basis in law for withholding documents"; it is not "reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members." *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 319–20 (D.D.C. 2020) (internal quotation marks omitted) (citing cases).  And, in any event, this case does not involve mere delay.  As described above, Defendant apparently changed its position as to whether it had to disclose documents to Plaintiff after she filed this lawsuit. *See supra* Section III.  Defendant offers no "colorable or reasonable basis" as to why. *Davy*, 550 F.2d at 1163.  This factor accordingly points toward Plaintiff's entitlement to fees.

Because all four factors weigh in Plaintiff's favor, the court concludes Plaintiff is entitled to attorney's fees under FOIA.

## V.

Defendant lastly challenges the reasonableness of Plaintiff's request for $36,973.65 in fees and costs. *See* Def.'s Opp'n at 17–22.  Generally, a plaintiff receives the product of "the hours reasonably expended in the litigation" multiplied by "a reasonable hourly fee," *Bd. of Trs. of the Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998), plus any "other

litigation costs reasonably incurred," 5 U.S.C. § 552(a)(4)(E). The parties agree that the Fitzpatrick Matrix provides a reasonable rate. *See* Pl.'s Mot., Decl. of C. Peter Sorenson, ECF No. 21-5 [hereinafter Sorenson Decl.], ¶ 17; Def.'s Opp'n at 18. The parties' dispute centers on whether Plaintiff's counsel spent a reasonable number of hours on this litigation. Plaintiff bears the burden of establishing reasonableness. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam).

Again, she has met her burden. The billing log shows why counsel spent 39.4 hours on the merits phase of this case. *See* Pl.'s Mot., Ex. 105, ECF No. 21-10 [hereinafter Ex. 105]; Pl.'s Mot., Ex. 106, ECF No. 21-11 [hereinafter Ex. 106]. This stage of the case required drafting the complaint, conferring with opposing counsel, and preparing twelve Joint Status Reports, in between which Plaintiff reviewed productions and challenged redactions. Pl.'s Reply in Further Supp. of Pl.'s Mot., ECF No. 24 [hereinafter Pl.'s Reply], Second Decl. of C. Peter Sorenson, ECF No. 24-3, ¶ 19. Counsel then spent 5.9 hours on the settlement phase and, after Defendant declined to settle, spent 39.3 hours briefing the instant motion for attorney's fees. *Id.* ¶¶ 22–23; Ex. 106. Plaintiff may permissibly seek "fees for fee litigation," *see Commissioner, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990), and the court finds the claimed hours reasonable, *see Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 11 (D.D.C. 2009) (finding reasonable counsel's assertion they spent 7.9 hours trying to settle and over 30 hours briefing the fees motion). The reasonableness of Plaintiff's ask is further supported by her exclusion of several hours of time entries from the fee request. *See* Sorenson Decl. ¶¶ 27–28; Ex. 105 at 12–15; *Kister v. District of Columbia*, 229 F.R.D. 326, 334 (D.D.C. 2005) (considering "plaintiff's good faith effort to adjust his requested fees downward"). The court therefore finds reasonable the hours for which counsel seeks compensation.

Defendant has failed to refute Plaintiff's showing. Defendant first urges the court to reduce the award because Plaintiff engaged in "consistent" "block billing." Def.'s Opp'n at 18–19. Block billing involves "lumping multiple tasks into a single time entry." *Tridico v. District of Columbia*, 235 F. Supp. 3d 100, 109 (D.D.C. 2017). Courts may reduce fees due to significant block billing because it can inhibit the ability to assess whether the time spent on each task is reasonable. *Id.* Plaintiff's counsel did not, however, engage in "consistent" block billing. The vast majority of counsel's time entries are under one hour and for discrete tasks. *See generally* Ex. 105. Defendant identifies only one specific entry with which it takes issue, in which counsel logged approximately 1.5 hours for "Communication with opposing counsel, case consultation, briefing schedule analysis and computation." Def.'s Opp'n at 19 (quoting Ex. 105 at 3). The court need not reduce fees for "minor instances of block billing" like this one. *DL v. District of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009); *see also Tridico*, 235 F. Supp. 3d at 109 ("Where block billing is used infrequently, however, a reduction may not be warranted."). Furthermore, this entry does not "appear nearly as egregious as those" for which other courts in this District have reduced fees awards. *DL*, 256 F.R.D. at 245 n.12; *see, e.g.*, *Tridico*, 235 F. Supp. 3d at 109–10 (noting "50 entries of five hours or more, 19 of which are for more than eight hours, and many of which are block billed"). Here, the court can ascertain that counsel's having spent 1.5 hours on the listed tasks was reasonable. The court accordingly will not reduce Plaintiff's award on this basis.

Defendant next accuses Plaintiff of "overstaff[ing] this relatively straightforward FOIA case with a partner, two associates, and two paralegals." Def.'s Opp'n at 19–20. This, Defendant reasons, "undoubtedly multiplied the billable time in this matter." *Id.* Defendant, however, has not demonstrated that counsel employed an unreasonable staffing structure for this case. The agency has not, for example, shown that multiple lawyers worked excessive hours on the same

tasks. *See Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999). And, as Plaintiff points out, assigning some work to associates or paralegals—whose services are billed at lower rates—likely *reduced* costs. *See* Pl.'s Reply at 21–22; Sorenson Decl. ¶ 11.

Defendant also contends that "specific billing entries were for unnecessary work." Def.'s Opp'n at 20. Defendant primarily takes issue with counsel having billed approximately ten hours drafting a "standard six-page, basic FOIA complaint, two pages of which is simply copying and pasting the exact FOIA request." *Id.* Much of the drafting, though, appears to have been conducted by an associate, *see* Ex. 105 at 2; Sorenson Decl. ¶ 11, who likely required more time to complete the task than would a partner. "Simply because someone else might have accomplished the task more quickly does not mean that the hours were unreasonable." *American Hosp. Ass'n v. Sullivan*, No. 88-cv-2027, 1990 WL 130020, at *3 (D.D.C. Aug. 7, 1990). And, as already described, assigning the task to an associate may have reduced costs, notwithstanding the additional time required. *Compare* Sorenson Decl. ¶ 11 (listing a rate of $207 per hour for the associate who drafted the complaint), *with id.* ¶ 20 (listing the senior attorney's rate at over $600 per hour).

Defendant then broadly challenges Plaintiff's request for "approximately $16,466 for routine FOIA work, such as participating in the creation of joint status reports and corresponding with opposing counsel when those communications never changed the course of events in this matter." Def.'s Opp'n at 20. The court has already explained that the amount requested for the merits stage of this case is reasonable. Moreover, Defendant's position that the communications "never changed the course of events in this matter" is belied by the record. For example, after Plaintiff challenged some of Defendant's redactions, Defendant amended and re-released 17 pages.

The court thus sees no reason to reduce the amount of fees claimed for the merits stage of this case.[2]

Defendant lastly argues that the court should reduce the "fees on fees" award. Def.'s Opp'n at 20. It first urges the court to do so "to the extent the Court is 'persuaded that most of Plaintiff's fee demands are unsubstantiated or unwarranted.'" *Id.* at 20–21 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1984)). For the reasons already described, the court finds Plaintiff's fees request reasonable, so the court has no basis for a corresponding reduction to the fees-on-fees amount. The court also does not find the amount requested to be a "'disproportionally large amount' compared to the fee award for the non-fee aspects of the litigation." *Id.* at 21 (citation omitted). Unlike the cases Defendant cites, the amount requested here does not comprise more than half of Plaintiff's request. *See id.* at 20 (characterizing Plaintiff's request as one for "an additional roughly forty percent on top of the fees requested for the litigation"); *id.* at 21 (citing *Brennan Ctr. for Just. v. Dep't of Homeland Sec.*, No. 16-cv-1609, 2019 WL 280954, at *5 (D.D.C. Jan. 22, 2019); *Merrick v. District of Columbia*, 316 F. Supp. 3d 498, 518 (D.D.C. 2018); *Cornucopia Inst. v. Agric. Mktg. Serv.*, 285 F. Supp. 3d 217, 227 & n.2 (D.D.C. 2018)). Lastly, while Defendant states that the court "should reduce any award by at least 75% to account for the insignificance of the relief obtained here," *id.* at 22, the court does not find the relief Plaintiff obtained—a change in position that resulted in the production of hundreds of pages of records—to be insignificant. For the same reason, the court will not reduce the $430.95

---

[2] Defendant also challenges Plaintiff's "seek[ing] compensation for 13.4 hours billed by its counsel (October 15-26, 2020) to prepare for drafting a motion to amend the scheduling order and for its counsel to prepare for a status conference during which Plaintiff obtained no relief." Def.'s Opp'n at 20. This case was not filed, however, until 2022. *See* Compl. And the court cannot discern an analogous set of entries on counsel's billing log. *See generally* Ex. 105. The docket also does not reflect such a motion.

Plaintiff has appropriately requested to cover filing and service costs.  *See id.* at 22; Sorenson Decl.

¶ 29.  The court will therefore award Plaintiff the full amount of the fees and costs requested.[3]

## VI.

For the foregoing reasons, the court grants Plaintiff's Motion for Attorney Fees and Costs,

ECF No. 21, in the amount of $36,973.65.

Dated:  February 6, 2026

_____
Amit P. Mehta
United States District Judge

---

[3] Contrary to Defendant's assertion, Plaintiff is not requesting any "enhanced fees" for "exceptional success."  Def.'s Opp'n at 21–22.  Plaintiff requests only compensation for the fees and costs counsel actually and reasonably incurred for the work performed in this case.